## THE ARK.

(District Court, S. D. Florida. November 15, 1926.)

No. 2282.

1. **Maritime liens** ⊜⟹3—House boat held "vessel," and subject to maritime liens (Comp. St. § 3).

Under Rev. St. § 3 (Comp. St. § 3), defining "vessel" as including "every description of water craft or other artificial contrivance, used or capable of being used as a means of transportation on water," a house boat, not permanently attached to the shore, though without motive power, is a vessel, and subject to maritime liens.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Vessel.]

**2. Maritime liens ⬤═29—Furnishers of labor and materials for alterations on a house boat held entitled to liens (Comp. St. §§ 7783–7785, 8146¼ooo).**

Furnishers of labor and materials for the repair and alteration of a house boat, under contracts with persons in lawful possession, without notice, or anything of record to give notice, that such persons were without authority to bind the vessel, *held* entitled to liens therefor under Act June 23, 1910, §§ 1–3 (Comp. St. §§ 7783–7785), and Comp. St. § 8146¼ooo.

In Admiralty. Suit by the Electrical Construction Company, and numerous interveners, against the boat Ark; Rose Stein, claimant. Decree for libelant and certain of the interveners.

Penney & Hicks, of Miami, Fla., for Electrical Construction Co.

Chas. H. Hyde, of Miami, Fla., and J. T. G. Crawford, of Jacksonville, Fla., for claimant.

CALL, District Judge. This cause comes on for final hearing upon the libel, interventions filed, and testimony taken herein.

January 21, 1926, the Electrical Construction Company filed its libel against the boat, claiming $3,600.97 for labor and materials furnished the boat in repairs. A claim was interposed on February 8th by Rose Stein, and bond given. On the same day an answer was filed, setting up that the party in possession of the boat was in such possession by reason of a lease, which lease has been forfeited and has expired. She admits the presence of the boat in the harbor; puts in issue the furnishing by libelant of the work and materials, but says, if such were furnished, it was done without her knowledge or consent; denies that the work and materials constitute a lien; denies that the cause is within the admiralty jurisdiction of the court, but says the boat is a house boat, without motive power and used for a number of years only as a place of residence and restaurant.

January 22d, Nat Eastman intervened, claiming wages as foreman, employed by Pastor & Bernstein, decorating and outfitting the boat, claiming $440 for wages and $112 for materials furnished at the request of the two parties, on which $45 has been paid. Claimant answered this intervention, setting up virtually the same defenses to the libel.

January 22d, A. J. Yarber filed his intervention, alleging the furnishing of labor and material to said vessel at the instance of the Freeman Enterprises Company, claiming $222.30. The answer of the claimant to this intervention makes the same defense as to the libel.

January 28th, Fred S. Front, Vallegant Joseph, Franceis Faltrace, Weiss William, M. Rosen, Otto Mann, William Weissengruber, Frank Harris, James Crowley, C. W. Paige, Jack Jack, A. Ducharme, and James Meeker filed their intervention, claiming wages as cooks and waiters, setting out the claims of each in amount. The claimant makes the same defense to this intervention as is made to the libel.

February 11th, Don C. Kemerer filed his intervention, claiming as assignee of one Frank Jenkins $617.60 due said Jenkins for work done on said boat for painting, etc. Claimant interposes the same defense as to the libel. Testimony was taken and the hearing held upon the libel, the interventions, answers, and testimony upon notice to the claimant.

The first question to be decided is: Has this court of admiralty jurisdiction of the cause on the case made by the libel, answer, and testimony offered in support of same. The facts appearing from the testimony, bearing on this point are as follows:

The vessel was moored alongside the shore and being used as a residence when claimant purchased it. She leased it to certain parties, who for a time occupied it as a residence. Subsequently a plan was made to have certain alterations made to fit it for a floating supper club and dance hall. The labor and materials, furnished in making these changes, are claims upon which the libel and interventions were filed. The boat was without machinery of any kind or sails for propulsion, and, if moved, could only be towed from place to place.

[1] Section 3, c. 1, Revised Statutes (Comp. St. § 3), is as follows: "The word 'vessel' includes every description of water craft or other artificial contrivance, used or capable of being used as a means of transportation on water." This would include the house boat in this case, unless it falls within the decision of the case of Cope v. Vallette Dry Dock Company, reported in 119 U. S. 625, 7 S. Ct. 336, 30 L. Ed. 501. Judge Brown in The Public Bath No. 13, and the two companion cases reported in 61 F. 692, held the bath house constructed on boats subject to salvage charges after it had broken loose from its moorings and was salvaged. This case was decided in 1894. The decision in the case of Cope v. Vallette Dry Dock Company, supra, was rendered in 1887. Justice Bradley in this case, delivering the opinion.

of the court, held the dry dock was not the subject of salvage, because it was permanently fixed to the shore, and to that extent construed section 3 of chapter 1 above quoted. In the instant case there was no permanent attachment of the house boat to the shore, as in the Cope Case, but more nearly approached the position of a ship temporarily withdrawn from commerce and moored to a dock. I must therefore decide that admiralty has jurisdiction of the cause and the cause was properly brought in admiralty.

[2] The next question to be decided is: Have the libelant and interveners maritime liens for such work, labor, and materials as they may show by the testimony that they performed and furnished? The decision of this question depends upon the language of the act of Congress passed June 23, 1910 (chapter 373 [sections 7783–7787, Comp. Statutes]).

Section 1 of the act (Comp. St. § 7783), re-enacted as subsection P of the Ship Mortgage Act of 1920 (Fed. Stat. Ann. 1920, p. 257), being Comp. St. § 8146¼ooo, reads as follows: "Any person furnishing repairs * * * to a vessel, whether foreign or domestic, upon the order of the owner or owners of such vessel, or of a person by him or them authorized, shall have a maritime lien on the vessel. * * *"

Section 2 (Comp. St. § 7784): "The following persons shall be presumed to have authority from the owner or owners to procure repairs, * * * for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted."

Section 3 (Comp. St. § 7785): "The officers and agents of a vessel specified in section two shall be taken to include such officers and agents when appointed by a charterer, by an owner pro hac vice, * * * but nothing in this act shall be construed to confer a lien when the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, * * * or for any

other reason, the person ordering the repairs, * * * was without authority to bind the vessel therefor."

Section 5 (Comp. St. § 7787): "This act shall supersede the provisions of all state statutes conferring liens on vessels in so far as the same purport to create rights of action to be enforced by proceedings in rem against vessels for repairs. * * *"

The testimony shows in this case that the libelant and A. J. Yarber and Nat Eastman, interveners, did certain work and furnished materials on the vessel on the orders of the persons lawfully in possession thereof. Their lien for the value of the same exists by virtue of the act, unless they knew, or by the exercise of due diligence could have ascertained, that the persons were without authority to bind the vessel. The testimony leaves no doubt on my mind on this part of the case.

The claimant delivered possession of the vessel to these parties under an agreement which she styles a lease, which was not recorded or produced at the hearing, although asked for, by which she claims that all repairs and changes were to be made at the cost of the parties to whom possession was delivered. No notice was given the persons doing the work and furnishing the materials, although she was cognizant that said work was going on. So that it seems to me that the case is fully covered by the act. I therefore find in favor of the libelant for the sum of $3,600.97, Nat Eastman for the sum of $552, and A. J. Yarber for the sum of $1,150.30, and that each of them have a maritime lien upon the vessel.

I further find against the claims of Fred S. Front, Vallegant Joseph, Franceis Faltrace, Weiss William, M. Rosen, Otto Mann, William Weissengruber, Frank Harris, James Crowley, C. W. Paige, Jack Jack, A. Ducharme, James Meeker, and Don C. Kemerer, interveners; they having produced no evidence in support of their claims.

A decree may be prepared pursuant to this opinion.