## In re GREAT LAKES TRANSIT CORPORATION, Limited, et al.

### HEUSSLER et al. v. GREAT LAKES TRANSIT CORPORATION, Limited, et al.

No. 6073.

Circuit Court of Appeals, Sixth Circuit.
March 13, 1933.

850

H. N. Longley, of New York City (Goulder, White & Garry, of Cleveland, Ohio, Bigham, Englar, Jones & Houston, of New York City, Robert G. McCreary, of Cleveland, Ohio, and E. G. B. Fox, of New York City, on the brief), for appellants.

F. L. Leckie and A. E. Petersilge, both of Cleveland, Ohio (Holding, Duncan & Leckie, of Cleveland, Ohio, on the brief), for appellees.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

This is an appeal in admiralty from an interlocutory decree denying exceptions in a proceeding to limit liability. Prior to October 9, 1929, respondents had entered into an agreement with the petitioner for the shipment of some two hundred thousand bushels of wheat from Port Arthur, Ontario, to Midland, Ontario, on board the barge "Glenbogie." This agreement provided, not only for the transportation of the grain, but also for its storage on board the Glenbogie during the winter months following; that is to say, until not later than April 1st following. The bills of lading provided that the property therein described had been received in apparent good order and condition, and was "to be delivered in like order and condition (the dangers of navigation, fire and collision excepted)."

By stipulation of the parties it appears that the Glenbogie arrived at destination on October 12, 1929. Thereupon her crew proceeded to lay up her machinery and put her in shape for the holding of the cargo. She was shifted from place to place in the harbor, and finally tied up, about October 25th, to and outside of the Barge No. 137 and the steamer James B. Eads, to which vessels, and to the adjacent wharf, she was made fast by lines. Some of the crew were laid off shortly after arrival at Midland, and the remaining number were relieved from duty upon November 15th. Thereafter the Glenbogie was not manned except that there were two men who acted as shipkeepers for the three vessels above mentioned.

On December 30, 1929, while frozen in the ice, a seacock suddenly burst and the barge went down by the stern and filled with water, damaging a portion of her cargo. Actions at law having been instituted in Buffalo and in Los Angeles to recover the loss thereby suffered, the petitioner brought the Glenbogie to Cleveland, Ohio, and, surrendering her to the court, filed its petition for limitation of liability and for an injunction restraining both the further prosecution of the law actions already begun by respondents and the commencement of new actions. The respondents appeared specially and excepted to the petition for limitation of liability "on the ground that this court has no jurisdiction of said proceeding since it appears from the petition that the barge 'Glenbogie' * * * at the time of the casualty described in the petition, was not a vessel either within the admiralty jurisdiction or within the meaning of sections 4283 to 4289 of the Revised Statutes of the United States and the acts amendatory thereof and supplemental thereto." 46 USCA §§ 183 to 189, inclusive. The exception was overruled, and exceptors appeal.

The exception above mentioned was in the nature of a demurrer or motion to dismiss for want of admiralty jurisdiction. Dennis v. Slyfield, 117 F. 474, 479 (C. C. A. 6). We pass, without deciding, the question whether the refusal to allow the exception, with the consequent retention of jurisdiction by the District Court, was such "an interlocutory decree in admiralty determining the rights and liabilities of the parties" as would permit an appeal under the amendment to section 129 of the Judicial Code by the Act of April 3, 1926, c. 102, 44 Stat. 233, 28 USCA § 227. Although no injunction restraining the prosecution of the law actions was issued in the District Court, "the very nature of the proceeding and the monition has the effect of a statutory injunction" (The San Pedro [Metropolitan Redwood Lumber Co. v. Doe], 223 U. S. 365, 372, 32 S. Ct. 275, 276, 56 L. Ed. 473, Ann. Cas. 1913D, 1221), and we assume that this court therefore has jurisdiction of the appeal upon the theory that an interlocutory injunction has issued. But it does not follow that, because the court below retained jurisdiction, the petitioner will be granted the relief sought. Retention of jurisdiction is merely the retention of the "power to consider and decide one way or the other, as the law may require, and is not to be declined merely because it is not foreseen with certainty that the outcome will help the plaintiff." Geneva Furniture Mfg. Co. v. S. Karpen & Bros., 238 U. S. 254, 259, 35 S. Ct. 788, 789, 59 L. Ed. 1295. Under Admiralty Rule 53, it was still open to the respondents "to contest the right of the owner or owners of said ship or vessel, either

to an exemption from liability or to a limitation of liability." This question is one upon the merits and of which a court of admiralty has exclusive jurisdiction. The Lotta, 150 F. 219 (D. C., S. C.); Langnes v. Green, 282 U. S. 531, 534, 535, 543, 51 S. Ct. 243, 75 L. Ed. 520. In Binderup v. Pathe Exchange, 263 U. S. 291, 305, 306, 44 S. Ct. 96, 98, 68 L. Ed. 308, the court said: "Jurisdiction as distinguished from merits, is wanting only where the claim set forth in the complaint is so unsubstantial as to be frivolous, or, in other words, is plainly without color of merit." Such is not the case here, and we think that the exception was properly overruled.

██ The foregoing position is emphasized by a consideration of the contention now urged by the appellant. It is said that the Glenbogie was not a "vessel" within admiralty jurisdiction or within the meaning of sections 4283 or 4289 of the Revised Statutes (46 USCA §§ 183, 189) during the time that it was being used as a floating warehouse for the winter storage of the grain, citing Pillsbury Flour Mills Co. v. Interlake S. S. Co., 40 F.(2d) 439 (C. C. A. 2), and cases there discussed. We think, however, that these decisions rest upon a different principle. The right to limitation of liability has frequently been held not to apply to the personal contracts of the owners (Cf. Richardson v. Harmon, 222 U. S. 96, 32 S. Ct. 27, 56 L. Ed. 110; Pendleton v. Benner Line, 246 U. S. 353, 38 S. Ct. 330, 62 L. Ed. 770; Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U. S. 139, 39 S. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522), unless, of course, the case falls within exceptions created under the Harter Act, 46 USCA §§ 190, 191, 192. Here we find no such question as was presented in Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co., 271 U. S. 19, 46 S. Ct. 379, 70 L. Ed. 805. The issue is merely whether the right to limit liability may be extended to cover a claim based upon the alleged breach of a contract made with the owners and which is not wholly maritime. While it may subsequently develop that in respect of such a contract a court of admiralty does not possess jurisdiction to afford ultimate relief (See The Ada, 250 F. 194, 195 [C. C. A. 2]), because "in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality" (Grant Smith-Porter Ship Co. v. Rohde, 257 U. S. 469, 476, 42 S. Ct. 157, 158, 66 L. Ed. 321, 25 A. L. R. 1008; Great Lakes Dredge & Dock Co. v. Kierejewski, 261 U. S.

479, 43 S. Ct. 418, 67 L. Ed. 756), and the claimant may then be relegated to the prosecution of the law actions already begun in order to obtain relief, the facts which control in this situation may be, and we think should be, set up by answer and proved. We cannot assume in advance that the claims of appellants in the law actions are nonmaritime or that the instant case will not be correctly decided by the District Court when the facts are fully presented.

For the reasons above stated, the decision of the District Court is affirmed, and the cause is remanded for further proceedings consistent with this opinion.