THE JOSEPH WARNER.

No. 817.

District Court, D. Massachusetts.

Dec. 8, 1939.

Edward A. Neiley, of Boston, Mass., for libelant and intervening petitioners Boston Dry Dock Co. and Snow & Petrelli Mfg. Co.

Bingham, Dana & Gould, of Boston, Mass., for petitioner Alfred Hager (Hub-Machine Works.).

Jacobs & Jacobs, of Boston, Mass., for petitioner Westerbeke Fishing Gear Co., Inc.

BREWSTER, District Judge.

This libel is brought to enforce a maritime lien. It is alleged that the libellant in January, 1938, furnished to the vessel "Joseph Warner" a Diesel engine, and during 1938 and 1939 furnished the vessel with repairs, supplies and necessaries, for all of which the vessel owes the libellant a balance of $3,560.74.

The libel was taken pro confesso, and the owner defaulted for failure to plead. The lien, therefore, against the vessel is established, and it is now too late for the owner to contend that it has been lost by the acceptance of a note.

The matter is now before the court upon libellant's petition that the owner be ordered to restore a deck winch, a pair of gallowses, a compass and a set of running lights, which the libellant alleges were improperly removed from the vessel by the owner. Since the hearing, it has been discovered that a compass had been returned to the libellant, which it is willing to accept as the compass for which a return had been petitioned. The only question, therefore, is whether upon the facts presently to be stated it could be held that the lien attached to the winch, gallowses and running lights.

From the evidence I find that, when the Diesel engine was installed at T-wharf, in Boston, the Joseph Warner was outfitted with sails, rigging and gallowses. Shortly thereafter the vessel was equipped with a new deck winch, installed at New Bedford, Mass. This winch was to be used in fishing operations, and when the vessel left New Bedford early in 1938 she was completely outfitted as a fishing vessel. She continued to operate until June, 1939, when the winch and gallowses were removed and installed in another vessel belonging to the owner of the Joseph Warner. On July 4, 1939, the Joseph Warner was brought to Boston and abandoned to whatever action the libellant might take, the owner having been pressed for payment of the balance due the libellant. The vessel was seized in these proceedings July 14, 1939.

Some of the supplies or repairs, furnished the vessel by the libellant, for which it charges the vessel, were furnished after the winch and gallowses had been installed in the vessel. Regarding the running lights, the evidence does not enable me to determine what became of them. The master of the vessel denies having taken them. The libellant does not sustain its burden of showing that these lights were in the possession of the owner.

I will, therefore, only consider whether the owner should be required to return the winch and gallowses.

The maritime lien attached to the vessel, which is considered to consist of the hull, engine, tackle, apparel and furniture. All of these become subject to the liabilities of the ship. The Hope, D.C., 191 F. 243; The Augusta, D.C., 15 F.2d 727; The Katherine, D.C., 15 F.2d 387; The Showboat, D.C., 47 F.2d 286, 1931 A.M.C. 19.

If these missing appurtenances had been upon the vessel at the time of the seizure, no question could be successfully raised concerning the rights of the libellant to enforce its lien against them.

It is said that: "The maritime lien is an appropriation of the ship as a security for a debt or claim, such appropriation being made by the law; the law creates a remedy for the claim against the

534

ship herself and vests in the creditor a special property in her, which subsists from the moment the debt arises and follows the ship into the hands of an innocent purchaser." Benedict on Admiralty, Vol. 1, page 17.

It was held, in an early admiralty case where the master had stripped the vessel of its appurtenances after seizure, that he was bound to pay to the Registry the proceeds from the sale of the appurtenances. The George Prescott, Fed.Cas.No.5,339.

This decision is the only one which counsel has been able to discover, or which I have found, which approaches the question presented in the instant case. Manifestly, it is not exactly in point because the vessel was stripped after seizure and there could be no doubt that the lien would attach to everything pertaining to the vessel at the time of the seizure. The determining question of law is whether the libellant can claim a lien on apparatus the owner had installed in a fishing vessel and which he removed before the vessel was seized.

■ I have reached the conclusion that the lien does attach. Some of the repairs, or supplies, for which a lien is claimed, were made after the winch and the gallowses were installed. Furthermore, the conclusion is compatible with the general principles which are applied in analogous situations involving the law of fixtures on real estate. It is settled law that fixtures annexed by a mortgagor of land after making the mortgage, are subject thereto. Hill v. F. & M. National Bank, 97 U. S. 450, 24 L.Ed. 1051; Southbridge Savings Bank v. Mason, 147 Mass. 500, 18 N.E. 406, 407, 1 L.R.A. 350. 28 Corpus Juris, page 728.

In Southbridge Savings Bank v. Mason, supra, it is stated that: "Whatever is placed in a building subject to a mortgage, by a mortgagor * * * to carry out the purpose for which it was erected, and permanently to increase its value for occupation or use, although it may be removed without injury to itself or the building, becomes part of the realty, as between mortgagor and mortgagee, and cannot be removed or otherwise disposed of while the mortgage is in force."

■ This proposition could very well be carried over into the law of maritime liens and paraphrased would read—that whatever is placed in·a vessel subject to a lien to carry out the purposes ·for which

the vessel was equipped, increasing its value for use although it may be removed without injury to itself or to the vessel, becomes a part of the vessel, as between lienor and owner, and cannot be removed or otherwise disposed of while the lien is in force.

I rule, therefore, that the libellant is entitled to have the winch and gallowses returned to the vessel, and a decree accordingly may be entered.