**OCEAN MACHINERY CORPORATION,**
Libelant,

v.

**UNITED STATES of America,**
Respondent.

United States District Court
S. D. New York.
Jan. 28, 1959.

Foley & Grainger, New York City, Joseph K. Grainger, Robert P. Whelan, New York City, Advocates, for libelant.

Arthur H. Christy, U. S. Atty., Benjamin H. Berman, Atty. in Charge Admiralty & Shipping Section, Dept. of Justice, Gilbert S. Fleischer, Admiralty and Shipping Section, New York City, Advocate, for respondent.

**FREDERICK van PELT BRYAN, District Judge.**

██ This is a suit in admiralty to recover the sum of $10,000 as the value of a rotary pump sold by libelant to the TMT Carib Queen, formerly the TMT Trailer Ferry.

The respondent United States is alleged to have become the owner of the vessel by bidding her in upon a sale in foreclosure of a preferred ship mortgage of which it was the holder. The sale was conducted by the United States Marshal in Jacksonville, Florida, pursuant to a writ of *venditioni exponas* issued by the United States District Court for the Southern District of Florida in the course of proceedings in rem instituted by the United States to foreclose its mortgage on the vessel. The pump is claimed to have been aboard the vessel when she was bid in by the Government.

The Government has excepted to the amended libel on the ground that it does not state facts sufficient to constitute a cause of action and has filed exceptive allegations setting forth various pertinent matters of public record.

The rather confusing amended libel includes in substance the following allegations:

Libelant furnished and supplied a suction rotary cargo pump to the TMT Carib Queen, formerly the TMT Trailer Ferry, at the instance of her owner, master, manager and agent in the value of $10,-000 and was not paid therefor. The pump was an item of portable equipment capable of being removed from the vessel and was not necessary to the running of the ship or affixed to it. Prior to the Marshal's sale at which the United States became the owner of the vessel, and before the writ of *venditioni exponas* was issued, libelant had sued the then owners of the vessel in this court. The suit was transferred upon libelant's application to the United States District Court for the Southern District of Florida, Jacksonville Division, by an order providing *inter alia* that libelant would be afforded an opportunity to intervene in the cause (presumably the foreclosure cause) pending there. However, libelant was not afforded an opportunity to do so or to protect its rights, and though it attempted to have the pump exempted from the sale, its application was not passed upon or considered by the district court. The respondent knew of libelant's pending claim but did not notify libelant of the pending sale "except by ordinary advertisement". The libelant does not know the whereabouts of the pump since the sale of the vessel, but alleges (1) that "it now remains on board the TMT Carib Queen", and (2) that "it is not now on board the TMT Carib Queen". The pump rightfully belongs to the libelant but respondent has refused to deliver it or to pay the purchase price.

Libelant asks for a decree in the amount of $10,000 with interest and costs.

██ It is more than a little difficult to determine on what theory libelant proceeds, or, indeed, to perceive a theory on which it could succeed in the light of undisputed facts contained in the exceptive allegations which are matters of record and properly to be considered in ruling on the exceptions to the libel. See The Seminole, D.C.E.D.N.Y., 42 F. 924; Suspine v. Compania Transatlantica Centroamericana, D.C.S.D.N.Y., 37 F.Supp. 263. Cf. Cuban Atlantic Sugar Sales

Corp. v. Marine Midland Trust Co., D.C. S.D.N.Y., 169 F.Supp. 806.

The United States was concededly the holder of a preferred ship mortgage on the vessel valid under the Ship Mortgage Act of 1920, 46 U.S.C.A. §§ 911–984. The mortgage was duly recorded on December 20, 1956 prior to the time when the pump and its appurtenances were sold and delivered to the vessel in January 1957.

■■■ The preferred ship mortgage expressly covered all of the appurtenances of the ship, "whether now owned or hereafter acquired", including "pumps and pumping equipment". The libelant has alleged nothing remotely indicating that the after-acquired pump, conceded on the argument to weigh 1,450 pounds and to have been in use aboard the vessel, was not covered by these provisions. The fact that the pump may have been capable of being removed from the ship, and the ship could have continued to operate without it, does not indicate that it was excluded from the mortgage. First Suffolk National Bank of Huntington v. The Air Brant, D.C.E.D.N.Y., 125 F.Supp. 709; The Huntington Sanfor, D.C.D.Mass., 73 F.Supp. 67.

Any lien which libelant may have had on the pump and its appurtenances arose subsequent to the execution and recording of the mortgage which had priority over all maritime liens arising out of transactions postdating the recording. 46 U.S.C.A. § 953; The Moshulu, D.C.N. D.Cal., 298 F. 348. Moreover, no claim of lien was ever filed by libelant as provided by 46 U.S.C.A. § 925(a) at Wilmington, the port of documentation, where such notices are required to be recorded by customs regulations. (19 C.F.R. 3.33(k), 3.38(h).)

The foreclosure proceedings had in the United States District Court for the Southern District of Florida were regular on their face and operated to vest in the United States, as the bidder at the Marshal's sale, full title to the vessel and her appurtenances, including the "pumps and pumping equipment" aboard her.

There is nothing now before the court to indicate that the decree of foreclosure in rem did not dispose of any questions there might have been as to any interest libelant had in the pump. Libelant up to now has alleged nothing to show that it had any interest in the pump which survived the foreclosure sale.

If it had, its remedy may be by motion in the foreclosure proceedings. It does claim that it applied to the district court in the foreclosure proceedings to exempt the pump from the sale and that its claim "was not passed upon or even considered". This contention does not appear to have any substance on the facts as they now appear. If any facts exist which might take the case out of the normal rule of res judicata or preserve any right in libelant other than to proceed in the foreclosure action itself, they have not been stated. Cf. Scrofani v. Miami Rare Bird Farm, 5 Cir., 208 F.2d 461; First Suffolk National Bank of Huntington v. The Air Brant, supra, and W. E. Hedger Transportation Corp. v. Ira S. Bushey & Sons, 2 Cir., 155 F.2d 321.

■■■ The libelant has not stated a claim upon which relief can be granted and the exceptions to the libel must be sustained. However, in view of the confusing state of the present record and the possibility, remote though it may be, that some facts may exist which would form the basis of a claim, the libelant will be permitted 20 days within which to serve an amended libel stating, if it can, a good claim for relief.

Settle order on notice.